**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOEL BORG, derivatively on behalf of RA MEDICAL SYSTEMS, INC., | |
| Plaintiff, | **C.A. No.** |
| v. | **DEMAND FOR JURY TRIAL** |
| DEAN IRWIN, MELISSA BURSTEIN, MARTIN BURSTEIN, ANDREW JACKSON, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR, WILLIAM R. ENQUIST, JR, and MARK E. SAAD. | |
| Defendants, | |
| and | |
| RA MEDICAL SYSTEMS, INC., | |
| Nominal Defendant. | |

## SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Noel Borg ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Ra Medical Systems, Inc. ("Ra Medical" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Dean Irwin ("Irwin"), Melissa Burstein, Martin Burstein, Andrew Jackson ("Jackson"), Richard Heyman ("Heyman"), Maurice Buchbinder ("Buchbinder"), Martin Colombatto ("Colombatto"), Richard Mejia, Jr. ("Mejia"), William R. Enquist, Jr. ("Enquist"), and Mark E. Saad ("Saad") (collectively, the "Individual Defendants" and together with Ra Medical, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Ra Medical, unjust enrichment, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act of

1934 (the "Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ra Medical, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Ra Medical's directors and officers concerning the Company's initial public offering that was completed in September 2018 (the "IPO") and the Proxy Statement that the Company filed with the SEC on April 19, 2019 (the "2019 Proxy Statement").

2.      Ra Medical is a medical device company that purports to use its excimer laser-based platform for treatment of vascular and dermatological immune-mediated inflammatory diseases.  The company was co-founded in 2002 by Defendants Irwin and Melissa Burstein, who are husband and wife. According to the 2019 Proxy Statement, Defendants Irwin and Melissa Burstein, along with Defendant Martin Burstein, who is Melissa Burstein's father, own approximately 40% of the common stock of the Company.

3.      The claims in this action arise from the materially misleading Registration Statement and Prospectus (collectively the "Registration Statement") issued in connection with

the IPO. In the IPO, Defendants offered and sold 4,485,000 shares of Ra Medical common stock to the public at a price of $17.00 per share.

4.      The Registration Statement contained untrue statements of material facts and omitted the facts necessary to make the statements made therein not misleading, thus violating the rules and regulations governing its preparation. Specifically, the Registration Statement failed to disclose:

      (1) that the Company's evaluation of sales personnel candidates was inadequate;

      (2) that the Company's training program for sales personnel was inadequate;

      (3) that, as a result, the Company could not reasonably assure that its newly hired sales personnel were adequately experienced;

      (4) that, as a result, the Company would suffer a shortage of qualified sales personnel;

      (5) that the Company's manufacturing process could not reasonably support increased catheter production; and

      (6) that, as a result, the Company would suffer production delays.

5.      The 2019 Proxy Statement, which was issued prior to a shareholders meeting in which the shareholders voted on the re-election of Defendants Irwin and Saad to the Company's Board of Directors, also contained untrue statements of material facts and omitted the facts necessary to make the statements made therein not misleading, thus violating the rules and regulations governing its preparation. Specifically, the Registration Statement failed to disclose:

      (1)      The Registration Statement, which Defendants Irwin and Saad either

signed or authorized the signing of, contained material misleading statements; and

(2) Defendant Irwin, as CEO, and the Audit Committee, of which Defendant Saad was a member, were not properly exercising their risk oversight function;

6. As a result of the foregoing, the statements contained in the Registration Statement and 2019 Proxy Statement were materially false and/or misleading and failed to state information required to be stated therein.

7. On September 30, 2019, approximately a year after the IPO, Ra Medical's common stock closed at $1.40 per share, a decline of $15.60 per share or at around 8% of the $17 IPO public price.

8. The Individual Defendants breached the fiduciary duties they owed to Ra Medical by willfully or recklessly making and causing the Company to make the false and/or misleading statements in the Registration Statement and 2019 Proxy Statement.

9. The Individual Defendants also failed to correct and/or caused the Company to fail to correct these false and/or misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

10. The Individual Defendants' breaches of fiduciary duty and other misconduct have subjected the Company and certain of the Company's officers and directors to a federal class action lawsuit pending in the United States District Court for the Southern District of California (the "Securities Class Action") under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act").  Under Section 11, the directors of the Company, including future directors who were named in the Registration Statement, along with the officers of the

Company who signed or authorized the signing of the registration statement are strictly liable for the materially untrue and misleading statements contained in the Company's offering documents. The Securities Class Action, the need to undertake internal investigations, losses from the waste of corporate assets, and losses due to the unjust enrichment of Individual Defendants who were improperly over-compensated by the Company is costing the Company millions of dollars.

11.     Accordingly, the Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

12.     In light of the breaches of fiduciary duty engaged in by the Company's Directors and the fact that they all face liability under Section 11 of the Securities Act because they signed, authorized the signing, and/or were named as directors in the Registration Statement, a majority of the Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

13.     A demand on Ra Medical's Board would also be futile because, by virtue of their voting power in the Company, Defendants Irwin, Melissa Burstein, and Martin Burstein have significant control over the continued employment of the directors of Ra Medical. Since a demand would concern the misconduct of Defendants Irwin, Melissa Burstein, and Martin Burstein, directors who are dependent on those Defendants for their jobs clearly cannot disinterestedly consider such a demand.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Securities Act.

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.    Additionally, diversity jurisdiction is conferred by 28 U.S.C. § 1332.  Plaintiff and Individual Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

18.    Venue is proper in this district because Nominal Defendant Ra Medical is incorporated in Delaware and the Individual Defendants are current or former directors and/or officers of a Delaware Corporation.

## PARTIES

### A.  Plaintiff

19.    Plaintiff is a current shareholder of Ra Medical and was a shareholder of the Company at all relevant times.  Plaintiff is a citizen of Arizona.

### B.  Nominal Defendant Ra Medical

20.    Defendant Ra Medical is a publicly traded company incorporated in Delaware with its principal executive offices located at 2070 Las Palmas Drive, Carlsbad, California 92011. Following the IPO, the Company's common stock began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "RMED."

21.     Ra Medical is a medical device company that purports to use its excimer laser-based platform for treatment of vascular and dermatological immune-mediated inflammatory diseases.  It currently manufactures and markets two lines of products: (1) DABRA, which it describes as a  "minimally-invasive excimer laser and disposable catheter system that is used by physicians as a tool in the endovascular treatment of vascular blockages resulting from lower extremity vascular disease" and (2) the Pharos Excimer Laser, which it describes as "a powerful 308 nm ultraviolet-B excimer laser used by physicians as a tool to treat chronic skin diseases, including psoriasis, vitiligo, atopic dermatitis, and leukoderma."

22.     The company was co-founded in 2002 by Defendants Irwin and Melissa Burstein, who are husband and wife. According to the Company's 2019 Proxy Statement, Defendants Irwin and Melissa Burstein, along with Defendant Martin Burstein, who is Melissa Burstein's father, own approximately 40% of the common stock of the Company.

**C. Defendant Irwin**

23.     Defendant Irwin co-founded Ra Medical with his wife, Melissa Burstein, in 2002.  Defendant Irwin has served as a director of the Company since September 2002. Additionally, he served as Chief Executive Officer ("CEO"), Chief Technology Officer ("CTO"), and Chairman of the Board ("Chairman') from September 2002 until August 11, 2019 and Co-President from May 2018 until August 11, 2019.  On August 12, 2019, Ra Medical filed an 8-K with the SEC (the "August 12, 2019 8-K") that stated that the Company had terminated Defendant Irwin as CEO, Co-President, and CTO effective August 11, 2019 and as an employee of the Company on August 12, 2019. Defendant Irwin's termination by the Company was without "Cause," as defined in his Change in Control and Severance Agreement (the "Severance Agreement"), which was filed as Exhibit 10.8 to the Company's

7

Registration Statement on Form S-1 (File No. 333-226191) with the SEC on July 16, 2018. The August 12, 2019 8-K also stated that the Board appointed Defendant Colombatto as Chairman to replace Mr. Irwin. The August 12, 2019 8-K further stated that the Audit Committee of Ra Medical's Board of Directors had commenced an independent investigation in connection with an anonymous complaint and that it had retained independent counsel to assist it in its investigation.

24.    As of the 2019 Proxy Statement, Defendant Irwin and his wife, Defendant Melissa Burstein, were the beneficial owners of 3,056,273 shares of the Company's common stock, which gives them 23.3% of the total shareholder voting power in the Company. Additionally, Irwin, Melissa Burstein, and Martin Burstein, Melissa Burstein's father, have approximately 40% of the voting power in the Company according the 2019 Proxy Statement.

25.    For the fiscal year ended December 31, 2018, Defendant Irwin received $10,874,823 in compensation from the Company. This included $292,109 in salary, a $175,200 bonus, $7,180,014 in stock awards, and $3,227,500 in option awards.

26.    The Company's 2019 Proxy Statement stated the following about Defendant Irwin:

> **Dean Irwin** founded Ra Medical in 2002 and has served as Chief Executive Officer, Chief Technology Officer and Chairman of the Board since September 2002 and as Co-President since May 2018. Prior to forming Ra Medical, Mr. Irwin was Vice President of Research, Development, and Engineering at PhotoMedex, Inc., a manufacturer of excimer lasers, from February 1998 to August 2002. Prior to his tenure at PhotoMedex, Inc., Mr. Irwin provided scientific consulting for Intel Corporation from January of 1999 to August 1999 and was Vice President of Engineering and General Manager at SpatiaLight, Inc., a manufacturer and seller of high-resolution liquid crystal on silicon microdisplays, from June 1993 to February 1998. Mr. Irwin was also a founder and Chief Scientist at DIR Corp., a custom equipment development company, from May 1985 to January 1991. Mr. Irwin has held various engineering positions with Acculase, Inc., a laser development company, (acquired by PhotoMedex), General Atomics, a defense contractor, and Universal Voltronics

Corp., a developer of high voltage power supplies. We believe that Mr. Irwin is qualified to serve as a member of our board of directors due to his senior management roles in multiple companies in the medical devices industry and his deep understanding of our business, operations, and strategy.

27.     Defendant Irwin signed or authorized the signing of the Registration Statement filed with the SEC.

28.     Defendant Irwin is a citizen of California.

**D.  Defendant Melissa Burstein**

29.     Defendant Melissa Burstein co-founded Ra Medical with her husband, Defendant Irwin, in 2002.  Defendant Melissa Burstein is currently a Vice President of the Company and served as Executive Vice President and a director of the Company from September 2002 until March 2019.

30.     As of the 2019 Proxy Statement, Defendant Melissa Burstein and her husband, Defendant Irwin, were the beneficial owners of 3,056,273 shares of the Company's common stock, which gives them 23.3% of the total shareholder voting power in the Company. Additionally, Melissa Burstein, Irwin, and Martin Burstein, Melissa Burstein's father, have approximately 40% of the voting power in the Company according the 2019 Proxy Statement.

31.     For the fiscal year ended December 31, 2018, Defendant Melissa Burstein received $6,895,782 in compensation from the Company. This included $202,570 in salary, a $417,000 bonus, $4,308,008 in stock awards, $1,936,500 in option awards, and $31,704 in all other compensation.

32.     Defendant Melissa Burstein signed or authorized the signing of the Registration Statement filed with the SEC.

33.     Defendant Melissa Burstein is a citizen of California.

### E.  **Defendant Martin Burstein**

34.    Defendant Martin Burstein served as a director of the Company from October 2003 until the Company's IPO became effective in September 2018.

35.    As of the 2019 Proxy Statement, Defendant Martin Burstein is the beneficial owner of 2,082,911 shares of the Company's common stock, which gives him 16.1% of the total shareholder voting power in the Company.   Martin Burstein along with his daughter, Melissa Burstein, and her husband, Irwin, have approximately 40% of the voting power in the Company according the 2019 Proxy Statement.  Additionally, as of December 31, 2018, Martin Burstein had 192,000 options to purchase shares of common stock and 179,250 restricted stock units outstanding.

36.    For the fiscal year ended December 31, 2018, Defendant Martin Burstein received $7,666,215 in compensation from the Company. This included $5,187,496 in stock awards and $2,478,720 in option awards.

37.    Defendant Martin Burstein signed or authorized the signing of the Registration Statement filed with the SEC.

38.    On information and belief, Defendant Martin Burstein is a citizen of California.

### F.  **Defendant Jackson**

39.    Defendant Jackson has served as the Company's Chief Financial Officer since April 2018 and its Interim CEO since August 12, 2019.

40.    The Company's 2019 Proxy Statement stated the following about Jackson:

***Andrew Jackson*** has served as our Chief Financial Officer since April 2018. From October 2016 to April 2018 he was Chief Financial Officer for AltheaDx, Inc, a molecular diagnostics company specializing in precision medicine. From March 2014 to March 2016, Mr. Jackson held senior financial positions, including Chief Financial Officer, at Celladon Corporation, a publicly-traded, clinical stage biotechnology company. From April 2013 to March 2014 he held

senior financial positions at Sapphire Energy, an industrial biotechnology company. Mr. Jackson received a MSBA in Finance in December 2006 from San Diego State University and a BSB in Accounting in June 1992 from the University of Minnesota. Mr. Jackson is also a certified public accountant (inactive).

41.     Defendant Jackson signed or authorized the signing of the Registration Statement filed with the SEC.

42.     Defendant Jackson is a citizen of California

**G.  Defendant Heyman**

43.     Defendant Heymann served as a director of Ra Medical from July 2008 until the Company's IPO became effective in September 2018.

44.     Defendant Heymann signed or authorized the signing of the Registration Statement filed with the SEC.

45.     Defendant Heyman is a citizen of California.

**H.  Defendant Buchbinder**

46.     Defendant Buchbinder has served as a Director of the Company since January 1, 2017.

47.     According to the Company's 2019 Proxy Statement, Defendant Buchbinder was the beneficial owner of 35,833 shares of the Company's common stock, and had 42,000 options to purchase shares of common stock and 38,625 restricted stock units outstanding as of December 31, 2018.

48.     For the fiscal year ended December 31, 2018, Defendant Buchbinder received $1,547,785 in compensation from the Company. This included $11,612 in cash, $993,953 in stock awards, and $542,220 in option awards.

49.     The Company's 2019 Proxy Statement stated the following about Defendant Buchbinder:

> **Maurice Buchbinder** has served as a director of Ra Medical since January 1,
> 2017. Dr. Buchbinder has served as Interventional Cardiologist for Maurice
> Buchbinder M.D., C.M., A Professional Corporation, from October 1994 to
> present. Dr. Buchbinder holds a Bachelor's of Science degree from McGill
> University in Montreal, Canada, and a Doctor of Medicine, Master of Surgery,
> from McGill University. He completed his post-graduate education at Stanford
> University where he specialized in Cardiovascular Medicine. We believe that
> Dr. Buchbinder is qualified to serve as a member of our board of directors due
> to his extensive experience in the medical and medical device industries.

50.     When Defendant Buchbinder was a doctor at the University of California at

San Diego, he served as a principal investigator in studies in the examining the Rotablader, a

tiny drill used to remove plaque from arteries.  At the same time, Defendant Buchbinder held

a stake worth millions of dollars in Heart Technologies, the company that sold the device.  A

1993 Food and Drug Administration audit of Dr. Buchbinder's research into the Rotablader

found significant deficiencies, including failures to conduct proper follow-up or to

appropriately report problems experienced by patients. The University of California at San

Diego subsequently banned him from performing other experiments on patients.

51.     When Defendant Buchbinder was appointed to the Company's Board of

Directors, he stated that "Ra Medical Systems is delivering a pivotal device to the

endovascular industry at just the right time, as catheter-based revascularization of occluded

arteries has been an ongoing challenge for many decades" and "I am certain that DABRA will

become the standard of care for treatment well beyond peripheral circulation. DABRA is a

product that addresses a truly unmet clinical need."

52.     Defendant Buchbinder signed or authorized the signing of the Registration

Statement filed with the SEC.

53.     Defendant Buchbinder is a citizen of California.

## I.   Defendant Colombatto

54.     Defendant Colombatto has served as a Director of the Company since January

2017, the Lead Director since September 2018, and Chairman of the Board since August 12,

2019

55.     According to the Company's 2019 Proxy Statement, Defendant Colombatto was

the beneficial owner of 35,833 shares of the Company's common stock, and had 42,000

options to purchase shares of common stock and 71,833 restricted stock units outstanding as of

December 31, 2018.

56.     For the fiscal year ended December 31, 2018, Defendant Colombatto received

$1,560,964 in compensation from the Company. This included $24,791 in cash, $993,953 in

stock awards, and $542,220 in option awards.

57.     The Company's 2019 Proxy Statement stated the following about Defendant

Colombatto:

> **Martin Colombatto** has served as a director of Ra Medical since January 2017.
> Mr. Colombatto has served as a Venture and Industry Partner of Seven Peaks
> Ventures LLP, a venture capital fund based in Bend, OR, since January 2016.
> From December 2013 to August 2014, Mr. Colombatto served as a director of
> PLX Technology, Inc., a technology company. Mr. Colombatto has also served
> as the Chief Executive Officer and President of Staccato Communications, Inc.,
> an Ultra Wideband semiconductor company, from January 2006 to March 2009
> and as Executive Chairman of Staccato Communications, Inc., from January
> 2006 to September 2010. Prior to joining Staccato, Mr. Colombatto served as
> Vice President and General Manager of the Networking Business unit of
> Broadcom Corp., a broadband communication semiconductor company, from
> July 1996 to July 2002. Mr. Colombatto was also previously employed by LSI
> Logic, an application specific semiconductor company, from August 1987 to
> July 1996. Mr. Colombatto also previously held engineering positions at
> Reliance Electric, a production automation and control company, from August
> 1985 to June 1987 and Texas Instruments, an electronics company, from June
> 1982 to April 1985. Mr. Colombatto holds a Bachelor's of Science Degree in
> Electronic Engineering Technology from California State Polytechnic
> University, Pomona. We believe that Mr. Colombatto is qualified to serve as a
> member of our board of directors due to his extensive management experience
> and familiarity with our business and strategy.

58.     Defendant Colombatto signed or authorized the signing of the Registration

Statement filed with the SEC.

59.     Defendant Colombatto is a citizen of California.

**J.  Defendant Mejia**

60.     Defendant Mejia has served as a Director of the Company since July 2018.

61.     According to the Company's 2019 Proxy Statement, Defendant Mejia had 8,235 restricted stock units outstanding as of December 31, 2018.

62.     For the fiscal year ended December 31, 2018, Defendant Mejia received $131,951 in compensation from the Company. This included $17,484 in cash and $114,467 in stock awards.

63.     The Company's 2019 Proxy Statement stated the following about Defendant Mejia:

> ***Richard Mejia, Jr.*** has served as a director of Ra Medical since July 2018. Mr. Mejia previously served as a partner in the San Diego office of Ernst & Young LLP, a public accounting firm, from 1988 up until his retirement in 2008, including that from 2001 through 2008 he led the Life Sciences practice. From 2014 to 2018 he served on the Board of Stemedica Cell Technologies, Inc., a life science company and from 2008 to 2015, Mr. Mejia served on the board of directors of Dot Hill Systems Corp., a public company which manufacturers software and hardware storage systems. From 2010 to 2012 he served on the board of directors of Sharp Health, a healthcare delivery system. Mr. Mejia holds a B.S. in Accounting from the University of Southern California. We believe that Mr. Mejia is qualified to serve as a director because of his extensive experience in public accounting, financial matters, industry knowledge and serving on boards of directors.

64.     Defendant Mejia signed or authorized the signing of the Registration Statement filed with the SEC.

65.     Defendant Mejia is a citizen of California.

**K.  Defendant Enquist**

66.     Defendant Enquist has served as a Director of the Company since July 2018.

67.     According to the Company's 2019 Proxy Statement, Defendant Enquist had 8,235 restricted stock units outstanding as of December 31, 2018.

68.     For the fiscal year ended December 31, 2018, Defendant Enquist received

$127,906 in compensation from the Company. This included $13,439 in cash and $114,467 in stock awards.

69.    The Company's 2019 Proxy Statement stated the following about Defendant Enquist:

> **William R. Enquist, Jr**. has served as a director of Ra Medical since July 2018. Mr. Enquist held various roles at Stryker Corporation, a medical device company, from 1986 to 2014, including Advisor from 2013 to 2014 and President, Global Endoscopy from 1998 to 2013. From 2015 to 2016, Mr. Enquist served as the chairman of the board of directors of EndoChoice Holdings, Inc., a publicly traded medical device company, until its acquisition by Boston Scientific in 2016. Mr. Enquist currently is chairman of the board of directors of Clinical Innovations and board director for SpineEx and Firefly Medical, all medical device companies. Mr. Enquist earned a BBA from the University of San Diego and completed Harvard University's Program for Management Development. We believe that Mr. Enquist is qualified to serve as a member of our board of directors because of his extensive experience as a senior executive officer of other healthcare companies.

70.    Defendant Enquist signed or authorized the signing of the Registration Statement filed with the SEC.

71.    Defendant Enquist is a citizen of California.

**L.    <u>Defendant Saad</u>**

72.    Defendant Saad has served as a Director of the Company since July 2018.

73.    According to the Company's 2019 Proxy Statement, Defendant Saad had 8,235 restricted stock units outstanding as of December 31, 2018.

74.    For the fiscal year ended December 31, 2018, Defendant Saad received $129,963 in compensation from the Company. This included $15,226 in cash and $114,467 in stock awards.

75.    The Company's 2019 Proxy Statement stated the following about Defendant Saad:

> **Mark E. Saad** has served as a director of Ra Medical since July 2018. Mr. Saad currently serves as Partner and Chief Operating Officer of Alethea Capital Management, LLC, an asset management firm based in San Diego. From

August 2014 to February 2017, Mr. Saad served as the Chief Financial Officer of Bird Rock Bio, Inc., a clinical stage biopharmaceutical company focused on developing innovative immuno-inflammatory regulators. Previously, Mr. Saad served as Chief Financial Officer of Cytori Therapeutics, a medical device developer and manufacturer, from 2004 to 2014, where he was responsible for finance and accounting, business development, and other operating functions. Prior to Cytori, he served as Executive Director of UBS Investment Bank, a multinational investment bank and financial services company, where he was the Chief Operating Officer of the Global Healthcare Group. Prior to UBS, Mr. Saad was part of the Health Care Investment Banking Group at Salomon Smith Barney, an investment bank. Mr. Saad has been a member of the board of directors of Axsome Therapeutics, Inc., a clinical-stage biopharmaceutical company, since December 2014. Mr. Saad holds a Bachelor of Arts from Villanova University. We believe that Mr. Saad is qualified to serve as a member of our board of directors due to his financial expertise and leadership experience.

76.     Defendant Saad signed or authorized the signing of the Registration Statement filed with the SEC.

77.     Defendant Saad is a citizen of California.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

78.     By reason of their positions as officers, directors, and/or fiduciaries of Ra Medical and because of their ability to control the business and corporate affairs of Ra Medical, the Individual Defendants owed Ra Medical and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Ra Medical in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Ra Medical and its shareholders so as to benefit all shareholders equally.

79.     Each director and officer of the Company owes to Ra Medical and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealings.

80.     The Individual Defendants, because of their positions of control and authority as

directors and officers of Ra Medical, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

81.     To discharge their duties, the officers and directors of Ra Medical were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

82.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Ra Medical, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Ra Medical's Board at all relevant times.

83.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Securities and Exchange Acts and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and

operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

84. To discharge their duties, the officers and directors of Ra Medical were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Ra Medical were required to, among other things:

(a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to Ra Medical's own Code of Conduct and Ethics ("Code of Ethics");

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how Ra Medical conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Ra Medical and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Ra Medical's operations would comply with all applicable laws and Ra Medical's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

85.     Each of the Individual Defendants further owed to Ra Medical and the shareholders the duty of loyalty requiring that each favor Ra Medical's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

86.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Ra Medical and were at all times acting within the course and scope of such agency.

87.     Because of their advisory, executive, managerial, and directorial positions with

Ra Medical, each of the Individual Defendants had access to adverse, non-public information about the Company.

88.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Ra Medical.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

89.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

90.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, violations of Sections 11 and 15 of the Securities Act, and violations of 14(a) of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

91.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In

furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Ra Medical was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

92.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

93.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Ra Medical, and was at all times acting within the course and scope of such agency.

## RA MEDICAL'S CODE OF ETHICS

94.    The Company's Code of Ethics applies to all directors, officers, and employees of Ra Medical.

95.    The Code of Ethics sets forth the following principles:

> • You must ensure that every business or financial record that you prepare or are involved with, whether related to internal or external transactions, is prepared timely and accurately. You must never falsify any Ra Medical document or business record, take any other action that distorts the true nature of any transaction, or fail to report to appropriate personnel any information that is necessary to ensure that Ra Medical properly records and accounts for every business transaction.

> • If you are involved in preparation of our financial statements and reports or other public disclosures, you must use all reasonable efforts to ensure

that all information and disclosures are full, fair, accurate, timely, and complete.

96.     The Code of Ethics further provides that those subject to the code must "promptly report violations or suspected violations of the Code, including requests by any other employee or colleague to violate the Code, or any threats or retaliation against someone who in good faith has reported a potential violation or who is cooperating in good faith in any investigation. If you are located in and engaged by Ra Medical in the U.S., you must report violations or suspected violations of the Code."

97.     In violation of the Code of Ethics, the Individual Defendants conducted little, if any, oversight of the Company's dissemination of materially false and misleading statements to the public and the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, violations of Sections 11 and 15 of the Securities Act, and violations of Section 14(a) of the Exchange Act. Moreover, in violation of the Code of Ethics, the Individual Defendants failed to maintain the accuracy of Company records and reports, comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Ethics.

## **ALLEGATIONS OF MISCONDUCT**

### A.  **Background**

98.     On September 24, 2018, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement.  The Registration Statement was declared effective on September 26, 2018.

99.     On September 27, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold

4,485,000 shares of common stock at a price of $17.00 per share. The Company received proceeds of approximately $67.6 million from the Offering. The proceeds from the IPO were purportedly to be used for expansion of its direct sales force and marketing of its products; clinical studies for new products and product enhancements; and other research and development activities, working capital, and general corporate purposes.

**B.  Materially Misleading Statements in the Registration Statement**

100.    As alleged in the Securities Class Action, the Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

101.    Regarding the Company's sales force, the Registration Statement stated:

We market and sell DABRA and Pharos primarily through our direct sales force in the U.S. As of June 30, 2018, we had a 15-person direct sales force in the U.S. with 12 persons focused on vascular and three persons focused on dermatology. Our sales force is organized by geographic sales territories, and each territory is managed by a sales manager who acts as the primary customer contact. We plan to continue to increase the size of our sales organization to expand our installed unit base and to increase utilization of the DABRA and Pharos. Our initial focus for DABRA is high-volume OBLs. We partner with distributors for DABRA and Pharos in select geographies outside of the U.S.

Our marketing department currently consists of five professionals. Our marketing program focuses on:

   •         educating physicians regarding the proper use and application of DABRA and Pharos;

   •         supporting physicians' efforts to enhance referral opportunities;

   •         improving patient and caregiver awareness of our treatments; and

   •         facilitating national and international marketing programs.

We use a targeted marketing approach to introduce our products to the medical marketplace. We primarily target our marketing efforts to practitioners through marketing materials, medical conferences and journals. In addition, we host

seminars and webinars where industry leaders discuss case studies and treatment techniques using DABRA and Pharos.

102.    Regarding the risks related to growing the Company's sales force, the

Registration Statement stated:

*We will need to grow the size of our organization, and we may experience difficulties in managing this growth.*

At June 30, 2018, we had 75 full-time employees. As our sales and marketing strategies develop, and as we transition into operating as a public company, we expect to need additional managerial, operational, sales, marketing, financial, and other personnel. Future growth would impose significant added responsibilities on members of management, including:

- identifying, recruiting, integrating, maintaining, and motivating additional employees;

- managing our internal development efforts effectively, while complying with our contractual obligations to contractors and other third parties; and

- improving our operational, financial and management controls, reporting systems and procedures.

Our future financial performance and our ability to successfully market and sell our products will depend, in part, on our ability to effectively manage any future growth, and our management may also have to divert a disproportionate amount of its attention away from day-to-day activities in order to devote a substantial amount of time to managing these growth activities.

If we are not able to effectively expand our organization by hiring new employees and expanding our groups of consultants and contractors, we may not be able to successfully implement the tasks necessary to further develop and commercialize our products and, accordingly, may not achieve our research, sales and marketing goals, which would have a material adverse effect on our business, financial condition, and results of operations.

103.    Regarding risks affecting production, the Registration Statement stated:

*We may experience development or manufacturing problems or delays that could limit the potential growth of our revenue or increase our losses.*

We may encounter unforeseen situations in the manufacturing and assembly of our products that would result in delays or shortfalls in our production. For example, our production processes and assembly methods may have to change to

accommodate any significant future expansion of our manufacturing capacity, which may increase our manufacturing costs, delay production of our products, reduce our product margin, and adversely impact our business. Conversely, if demand for our products shifts such that a manufacturing facility is operated below its capacity for an extended period, we may adjust our manufacturing operations to reduce fixed costs, which could lead to uncertainty and delays in manufacturing times and quality during any transition period.

Additionally, since all of our products are manufactured at our facility in Carlsbad, any contamination of the controlled environment, equipment malfunction, or failure to strictly follow procedures can significantly reduce our yield. A drop in yield can increase our cost to manufacture our products or, in more severe cases, require us to halt the manufacture of our products until the problem is resolved. Identifying and resolving the cause of a drop in yield can require substantial time and resources.

If our manufacturing activities are adversely impacted, or if we are otherwise unable to keep up with demand for our products by successfully manufacturing, assembling, testing, and shipping our products in a timely manner, our revenue could be impaired, market acceptance for our products could be adversely affected and our customers might instead purchase our competitors' products, which would have a material adverse effect on our business, financial condition, and results of operations.

104.   The Registration Statement omitted material information regarding the Company's business prospects and financial health. As such, the Registration Statement contained untrue statements of material facts or omitted to state the facts necessary to make the statements made therein not misleading, thus violating the rules and regulations governing its preparation.

105.   More specifically, the statements identified above were materially false and/or misleading because they failed to disclose:

> (1) that the Company's evaluation of sales personnel candidates was inadequate;
>
> (2)  that the Company's training program for sales personnel was inadequate;
>
> (3) that, as a result, the Company could not reasonably assure that its newly hired sales personnel were adequately experienced;

(4) that, as a result, the Company would suffer a shortage of qualified sales personnel;

(5) that the Company's manufacturing process could not reasonably support increased catheter production; and

(6) that, as a result, the Company would suffer production delays.

106.    The Registration Statement was also materially untrue and misleading because they failed to meet the requirements of Item 303 of Regulation S-K. 17 C.F.R. §229.303(a)(3)(ii). Item 303 requires the disclosure of known trends that have had or are reasonably expected to have a material impact on a company's business.  As set forth in detail above, all of these trends were reasonably likely to have a negative impact on Ra Medical's financial condition, and thus were required to be disclosed under Item 303.

**C.  Materially Misleading Statements in the 2019 Proxy Statement.**

107.    In the 2019 Proxy Statement the Company's Board nominated Defendant Irwin for re-election to the Board, stating that they believe that "Mr. Irwin is qualified to serve as a member of our board of directors due to his senior management roles in multiple companies in the medical devices industry and his deep understanding of our business, operations, and strategy."

108.    The Company's Board also nominated Defendant Saad, a member of the Company's Audit Committee, for re-election stating that "Mr. Saad is qualified to serve as a member of our board of directors due to his financial expertise and leadership experience."

109.    The 2019 Proxy Statement stated that one the key functions of the Board was its risk oversight function and that it was successfully fulfilling that function:

One of the key functions of our board of directors is informed oversight of our risk management process. Our board of directors does not have a standing risk

management committee, but rather administers this oversight function directly through the board of directors as a whole, as well as through its standing committees that address risks inherent in their respective areas of oversight. In particular, our board of directors is responsible for monitoring and assessing strategic risk exposure. Our audit committee is responsible for reviewing and discussing our major financial risk exposures and the steps our management has taken to monitor and control these exposures, including guidelines and policies with respect to risk assessment and risk management. Our audit committee also monitors compliance with legal and regulatory requirements and reviews related party transactions, in addition to oversight of the performance of our external audit function. Our nominating and corporate governance committee assists our board of directors in fulfilling its oversight responsibilities with respect to the management of risk associated with board organization, membership and structure, and corporate governance. Our compensation committee assesses and monitors whether any of our compensation policies and programs has the potential to encourage excessive risk-taking. The board believes its leadership structure is consistent with and supports the administration of its risk oversight function.

110.    The 2019 Proxy Statement also included the annual report of the Company's Audit Committee, which stated that the Audit Committee was fulfilling its oversight responsibilities:

> The audit committee is a committee of the Board of Directors comprised solely of independent directors as required by the listing standards of the New York Stock Exchange and rules and regulations of the SEC.  The audit committee serves as the representative of the Board with respect to its oversight of:
>
> o  our accounting and financial reporting processes and controls and the audit of our financial statements.
>
> o  the integrity of our financial statements;
>
> o  our compliance with legal and regulatory requirements and efficacy of and compliance with our corporate policies;
>
> o  inquiring about significant risks, reviewing our policies for risk assessment and risk management, and assessing the steps management has taken to control these risks; and
>
> o  the independent registered public accounting firm's appointment, qualifications and independence.
>
> The audit committee also reviews the performance of our independent

registered public accounting firm, Deloitte & Touche LLP, including the qualifications and performance of the lead partner, in the annual audit of our financial statements and in assignments unrelated to the audit, and reviews and preapproves the independent registered public accounting firm's audit and non-audit fees.

The members of the audit committee are currently Richard Mejia, Jr. (chair), Martin Colombatto, and Mark E. Saad. Each of the members of the Audit Committee is an "independent director" as currently defined in the applicable New York Stock Exchange and U.S. Securities and Exchange Commission ("SEC") rules. The Board of Directors has also determined that Mr. Mejia is an "audit committee financial expert" as described in applicable rules and regulations of the SEC.

In fulfilling its oversight responsibilities, the audit committee meets at least quarterly and provides our Board such information and materials as it may deem necessary to make our Board aware of financial matters requiring the attention of our Board. The audit committee reviews our financial disclosures and meets privately, outside the presence of our management, with our independent registered public accounting firm. The audit committee also reviewed and discussed the audited financial statements in our 2018 Annual Report with management, including a discussion of the quality and substance of the accounting principles, the reasonableness of significant judgments made in connection with the audited financial statements, and the clarity of disclosures in the financial statements. The audit committee reports on these meetings to our Board.

The audit committee has reviewed and discussed the Company's audited financial statements with management and Deloitte & Touche LLP, the Company's independent registered public accounting firm. The audit committee has discussed with Deloitte the matters required to be discussed by Public Company Accounting Oversight Board Auditing Standard No. 1301 (Communications with Audit Committees).

The audit committee has received and reviewed the written disclosures and the letter from Deloitte required by the applicable requirements of the Public Company Accounting Oversight Board regarding Deloitte's communications with the audit committee concerning independence, and has discussed with Deloitte its independence.

Based on the review and discussions referred to above, the audit committee recommended to the board of directors that the Company's audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2018 for filing with the Securities and Exchange Commission. The audit committee also has selected Deloitte & Touche LLP as the independent registered public accounting firm for fiscal year 2019. The Board recommends that stockholders ratify this selection at the Annual

Meeting.

111.    The statements the 2019 Proxy Statement identified above were materially false and/or misleading because they failed to disclose that:

(1) The Registration Statement, which Defendants Irwin and Saad either signed or authorized the signing of, contained material misleading statements; and

(2) Defendant Irwin, as CEO, and the Audit Committee, of which Defendant Saad was a member, were not properly exercising their risk oversight function; and

(3) as a result of the foregoing, Ra Medical's public statements were materially false and misleading at all relevant times.

112.    On June 6, 2019, Defendants Irwin and Saad were re-elected to the Board based on the materially misleading 2019 Proxy statement.

113.    A little more than two months later, the Company announced in the August 12, 2019 8-K that it had terminated Defendant Irwin as CEO, Co-President, and CTO on August 11, 2019, and as an employee of the Company on August 12, 2019.  The Company further announced that the Board appointed Defendant Colombatto as Chairman to replace Defendant Irwin.  Irwin, however, remains on the Board.

114.    The Company also announced in the August 12, 2019 8-K that Ra Medical's Audit Committee had commenced an independent investigation in connection with an anonymous complaint and retained independent counsel to assist in the investigation.  The August 12, 2019 8-K further stated that the Company had informed the Securities and Exchange Commission ("SEC") of the investigation and it was delaying the filing of its Form 10-Q.

## DAMAGES TO RA MEDICAL

115.    In breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused or permitted the Company to make the false and misleading statements and omissions of material fact to the investing public as set forth above.

116.    Moreover, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

117.    As a direct and proximate result of the Individual Defendants' conduct, Ra Medical has lost and will continue to lose and expend many millions of dollars.

118.    Such expenditures include, but are not limited to, legal fees and payments associated with the Securities Class Action filed against the Company and certain of its officers and directors, all internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

119.    Additionally, these expenditures include, but are not limited to, lavish compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

120.    As a direct and proximate result of the Individual Defendants' conduct, Ra Medical has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

121.    Plaintiff brings this action derivatively and for the benefit of Ra Medical to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Ra Medical, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) of the Exchange Act,  as well as the aiding and abetting thereof.

122.    Ra Medical is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

123.    Plaintiff is, and has been at all relevant times, a shareholder of Ra Medical. Plaintiff will adequately and fairly represent the interests of Ra Medical in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

124.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

125.    A pre-suit demand on the Board of Ra Medical is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following six individuals: Defendants Irwin, Buchbinder, Colombatto, Mejia, Enquist, and Saad (the "Directors").

126.    Plaintiff needs only to allege demand futility as to three of the six Directors who are on the Board at the time this action is commenced.

127.    Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability under Section 11 of the Securities Act and Section 14(a) of the Exchange Act and for breach of fiduciary duty as

directors and officers of Ra Medical, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, as a result of the false and misleading statements and omissions of material facts in the Company's Registration Statement and 2019 Proxy Statement, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other who committed wrongdoing.

128.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The false and misleading statements made the Company appear more profitable and attractive to investors. As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

**A.  <u>The Company Admits, as it Must, That Director Irwin is Not Independent</u>**

129.    Additional reasons that demand on Defendant Irwin is futile follow. Defendant Irwin co-founded the Company and served as its CEO, CTO, and Chairman from September 2002 until August 11, 2019 and Co-President from May 2018 until August 11, 2019.  He received $10,874,823 from the Company in 2018.  As a holder of 23.3% of the total shareholder voting power in the Company with his wife, Melissa Burstein, and approximately 40%, when the holding of his father-in-law, Martin Burstein, are included, Irwin was ultimately responsible for the wrongful conduct described herein. His large Company stock holdings also reveal his interest in keeping the stock price as high as possible. Thus, as the Company acknowledges, Defendant Irwin is a non-independent director.  As founder, CEO, CTO, Chairman, and Co-President of the Company, Defendant Irwin conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously

disregarded his duties to monitor such controls over reporting and consciously disregarded his duties to protect corporate assets. Moreover, Defendant Irwin is a defendant in the Securities Class Action. Defendant Irwin also was the maker of the false statements and omissions of material fact that are alleged herein, as he signed or authorized the signing of the Registration Statement. Thus, for these reasons, too, Defendant Irwin breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

### B. Demand Upon the Other Directors is Futile Because Defendants Irwin, Melissa Burstein, and Martin Burstein Have Significant Control Over the Company.

130.    Demand in this case is excused because Directors Buchbinder, Colombatto, Mejia, Enquist, and Saad are beholden to Defendants Irwin, Melissa Burstein, and Martin Burstein because they controlled approximately 40% of the voting power in the Company as of the 2019 Proxy Statement. Accordingly, Ra Medical's 2018 10-K admitted that one of the "*Risks Related to Ownership of Our Common Stock*" is that "*our principal stockholders and management own a significant percentage of our stock and will be able to exert significant control over matters subject to stockholder approval.*" (emphasis in original). The 2018 10-K further stated that when options and restricted stock units are considered it "would give our officers, directors, and 5% stockholders ownership[1] of approximately 44% of our outstanding common stock if such awards are fully vested and are exercised in full." Accordingly, it concluded that "*these stockholders may be able to control elections of directors*, amendments of our organizational documents, or approval of any merger, sale of assets, or other major corporate transaction." (emphasis added).

---

[1]     This statement in the 2018 10-K does not include Laurence W. Lytton, who did not become a 5% shareholder until 2019. At the time the 2018 10-K was filed, the only 5% shareholders were Defendants Irwin, Melissa Burstein, and Martin Burstein.

131.    Thus, the Directors would be unable to evaluate a demand with disinterest or independence as a result of Defendants Irwin, Melissa Burstein, and Martin Burstein's control of the Company since the demand would concern misconduct by those Defendants.

## C.   **Additional Demand Futility Allegations.**

132.    Additional reasons that demand on Defendant Buchbinder is futile follow. Defendant Buchbinder has served as a Director of the Company since January 1, 2017 and he serves on the Nominating and Corporate Governance Committee. He received wildly disproportionate and inappropriate compensation of $1,547,785 in 2018 for his role as Director. The fact that all but $11,612 of the compensation was in stock or options awards reveal his interest in keeping the stock price as high as possible.  Furthermore, although Defendant Buchbinder ostensibly received this outlandish compensation for his service as a Director, it can only be reasonably interpreted as a payment from the Company to a prominent cardiologist to endorse Ra Medical's DABRA laser.  As the FDA's 1993 audit of Defendant Buchbinder's research concerning the Rotablader and the University of California at San Diego's subsequent disciplinary action against him indicate, Defendant Buchbinder cannot act independently given his financial interest in Ra Medical and its products.  As a trusted Director and member of the Nominating and Corporate Governance Committee, he conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets.  Moreover, Defendant Buchbinder is a defendant in the Securities Class Action.  Defendant Buchbinder is liable for the false statements and omissions of material fact in the Registration Statement because he signed or authorized the signing of the Registration Statement, and it named him as a Director of the Company. For these reasons,

Defendant Buchbinder breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

133.    Additional reasons that demand on Defendant Colombatto is futile follow. Defendant Colombatto has served as a Director of the Company since January 2017 and Lead Director since September 2018.  He serves as Chairman of the Compensation Committee and as a member of the Audit Committee. He received wildly disproportionate and inappropriate compensation of $1,560,964 in 2018 for his role of Director.  Additionally, the fact that all but $24,791 of the compensation was in stock or options awards reveal his interest in keeping the stock price as high as possible. As Lead Director, Chairman of the Compensation Committee, and a member of the Audit Committee, he conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets. Moreover, Defendant Colombatto is a defendant in the Securities Class Action.  Defendant Colombatto is liable for the false statements and omissions of material fact in the Registration Statement because he signed or authorized the signing of the Registration Statement, and it named him as a Director of the Company.  For these reasons, Defendant Colombatto breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

134.    Additional reasons that demand on Defendant Mejia is futile follow. Defendant Mejia has served as a Director of the Company since July 2018. He serves as Chairman of the Audit Committee and as a member of the Compensation Committee. He received lavish compensation of $131,951 in 2018 for his role of Director. Additionally, the fact that all but $17,484 of the compensation was in stock or options awards reveal his interest in keeping the

stock price as high as possible. As a trusted director and Chairman of the Audit Committee and a member of the Compensation Committee, he conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets.  Moreover, Defendant Mejia is a defendant in the Securities Class Action.  Defendant Mejia is liable for the false statements and omissions of material fact in the Registration Statement because he signed or authorized the signing of the Registration Statement, and it named him as a Director of the Company. For these reasons, Defendant Mejia breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

135.    Additional reasons that demand on Defendant Enquist is futile follow. Defendant Enquist has served as a Director of the Company since July 2018. He serves as a member of the Compensation and Nominating and Corporate Governance Committees. He received lavish compensation of $127,906 in 2018 for his role of Director. Additionally, the fact that all but $13,439 of the compensation was in stock or options awards reveal his interest in keeping the stock price as high as possible. As a trusted director and a member of the Compensation and Nominating and Corporate Governance Committees, he conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets.  Defendant Enquist is liable for the false statements and omissions of material fact in the Registration Statement because he signed or authorized the signing of the Registration Statement, and it named him as a Director of the Company.  For these reasons, Defendant Enquist breached his fiduciary duties, faces a substantial likelihood of

liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

136.     Additional reasons that demand on Defendant Saad is futile follow. Defendant Saad has served as a Director of the Company since July 2018. He serves as Chairman of the Nominating and Corporate Governance Committee and as a member of the Audit Committee. He received lavish compensation of $129,963 in 2018 for his role of Director. Additionally, the fact that all but $15,226 of the compensation was in stock or options awards reveal his interest in keeping the stock price as high as possible. As a trusted director and Chairman of the Nominating and Corporate Governance Committee and a member of the Audit Committee, he conducted little, if any, oversight of the Company's dissemination of false and misleading statements, consciously disregarded his duties to monitor such controls over reporting, and consciously disregarded his duties to protect corporate assets.  Defendant Saad is liable for the false statements and omissions of material fact in the Registration Statement because he signed or authorized the signing of the Registration Statement, and it named him as a Director of the Company. For these reasons, Defendant Saad breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

137.     The Directors have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, demand upon the Directors would be futile.

138.    In violation of the Code of Ethics, the Directors conducted little, if any, oversight of the Company's issuance of materially false and misleading statements to the public and of the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, and violations of Sections 11 and 15 of the Securities Act and Section 14A of the Exchange Act. In further violation of the Code of Ethics, the Directors failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical manner, protect and properly use corporate assets, and properly report violations of the Code of Ethics. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

139.    Ra Medical has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Ra Medical any part of the damages Ra Medical suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

140.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As the Directors face a substantial likelihood of liability, they are self-interested in the acts challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

141. The acts complained of herein constitute violations of fiduciary duties owed by Ra Medical's officers and directors, and these acts are incapable of ratification.

142. The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Ra Medical. If there is a directors and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Ra Medical, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

143. If there is no directors' and officers' liability insurance, then the Directors will not cause Ra Medical to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

144. Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least three of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against Individual Defendants for Violations of
### Section 14(a) of the Exchange Act

145.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

146.   The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

147.   Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

148.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

149.   Under the direction and watch of the Directors, the 2019 Proxy Statement failed

to disclose that: (1) The Registration Statement, which Defendants Irwin and Saad either signed or authorized the signing of, contained material misleading statements; (2) Defendant Irwin, as CEO, and the Audit Committee, of which Defendant Saad was a member, were not properly exercising their risk oversight function; (3) as a result of the foregoing, Ra Medical's public statements were materially false and misleading at all relevant times.

150. In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2019 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2019 Proxy Statement, including but not limited to, election of directors, ratification of an independent auditor, and the approval of officer compensation.

151. The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2019 Proxy Statement.

## SECOND CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

152. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

153. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Ra Medical's business and affairs.

154. Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

155. The Individual Defendants' conduct set forth herein was due to their intentional

Case 1:19-cv-01847-UNA  Document 1  Filed 10/01/19  Page 42 of 47 PageID #: 42

or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Ra Medical.

156. In breach of their fiduciary duties owed to Ra Medical, the Individual Defendants willfully or recklessly allowed the Company to make the false and/or misleading statements and/or omissions of material fact in the Registration Statement and 2019 Proxy Statement detailed above.

157. The Individual Defendants also failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

158. Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain internal controls.

159. The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and artificially inflated the price of Ra Medical's securities.

160. The Individual Defendants had actual or constructive knowledge that they had caused the Company to make the false and/or misleading statements and/or omissions of material fact as set forth herein and to fail to maintain internal controls. The Individual

Defendants had actual knowledge that the Company was disseminating the false and misleading statements set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly to make the false and/or misleading statements and/or omissions of material fact and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to correct the false and/or misleading statements and/or omissions of material fact alleged herein and to prevent them from continuing to occur.

161.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

162.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Ra Medical has sustained and continues to sustain significant damages.

163.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

164.    Plaintiff on behalf of Ra Medical has no adequate remedy at law.

### THIRD CLAIM

**Against Individual Defendants for Unjust Enrichment**

165.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

166.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Ra Medical.

167.    The Individual Defendants, based on improper conduct, received bonuses, stock options, or similar compensation from Ra Medical that was tied to the performance or

artificially inflated valuation of Ra Medical, received compensation that was unjust in light of the Individual Defendants' bad faith conduct, or received excessive compensation.

168.    Plaintiff, as a shareholder and a representative of Ra Medical, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including any benefits and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

169.    Plaintiff on behalf of Ra Medical has no adequate remedy at law.

## FOURTH CLAIM

**Derivative Claim Against the Individual Defendants for Abuse of Control**

170.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

171.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Ra Medical, for which they are legally responsible.

172.    As a direct and proximate result of the Individual Defendants' abuse of control, Ra Medical has sustained significant damages. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Ra Medical has sustained and continues to sustain significant damages.

173.    As a result of the misconduct alleged herein, the Individual Defendants and liable to the Company.

174.    Plaintiff on behalf of Ra Medical has no adequate remedy at law.

## FIFTH CLAIM

### Derivative Claim Against the Individual Defendants for
### Gross Mismanagement

175.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

176.  By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Ra Medical in a manner consistent with the operations of a publicly-held corporation.

177.  As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Ra Medical has sustained and will continue to sustain significant damages.

178.  As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

179.  Plaintiff on behalf of Ra Medical has no adequate remedy at law.

## SIXTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

180.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

181.  The Individual Defendants caused the Company to pay themselves excessive salaries, bonuses, fees, and stock grants to the detriment of the shareholders

182.  As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Ra Medical to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs

to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

183.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

184.    Plaintiff on behalf of Ra Medical has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Ra Medical, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Ra Medical;

(c)    Determining and awarding to Ra Medical the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Ra Medical and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Ra Medical and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and

develop and implement procedures for greater shareholder input into the policies and guidelines of the board;

2. a provision to permit the shareholders of Ra Medical to nominate at least three candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Ra Medical restitution from Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

Dated: October 1, 2019

Of Counsel:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Attorneys for Plaintiff*